# EXHIBIT "A"

| | |
|---|---|
| Quarles & Brady LLP<br>Firm State Bar No. 00443100<br>Renaissance One<br>Two North Central Avenue<br>Phoenix, AZ 85004-2391<br>TELEPHONE 602.229.5200 | |

Proposed Attorneys for Debtors and Debtors-in-Possession

John A. Harris (#014459)
john.harris@quarles.com
Robert P. Harris (#011523)
robert.harris@quarles.com
Lori L. Winkelman (#021400)
lori.winkelman@quarles.com
Jason D. Curry (#026511)
jason.curry@quarles.com

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SKYMALL, LLC,<br><br>        Debtor.<br><br>Joint Administration pending with:<br><br>XHIBIT CORP.,<br>XHIBIT INTERACTIVE, LLC,<br>FLYREPLY CORP.,<br>SHC PARENT CORP.,<br>SPYFIRE INTERACTIVE, LLC,<br>STACKED DIGITAL, LLC, and<br>SKYMALL INTERESTS, LLC. | In Proceedings Under Chapter 11<br><br>Case No. 2:15-bk-00679-BKM<br><br>Joint Administration pending with Case Nos.:<br><br>2:15-bk-00680-MCW<br>2:15-bk-00682-MCW<br>2:15-bk-00684-DPC<br>2:15-bk-00685-MCW<br>2:15-bk-00686-MCW<br>2:15-bk-00687-GBN<br>2:15-bk-00688-EPB |
| This Pleading applies to:<br><br>    ☑ All Debtors<br>    ☐ Specified Debtors | **VERIFIED STATEMENT IN SUPPORT OF DEBTORS' EMERGENCY APPLICATION FOR ENTRY OF AN ORDER AUTHORIZING THE EMPLOYMENT AND RETENTION OF COHNREZNICK CAPITAL MARKET SECURITIES, LLC AS INVESTMENT BANKER PURSUANT TO 11 U.S.C. §§ 327AND 328**<br><br>[PORTION OF COMPENSATION BASED ON PERCENTAGE OF SALE TRANSACTION UNDER § 328(a)] |

1. Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, I, **Jeffrey R. Manning**, declare:

2. I am a **Managing Director** and group head of the Special Situations Practice at CohnReznick Capital Market Securities, LLC ("**CRCMS**"). I submit this declaration (the "**Declaration**") in support of the application of the above-captioned debtors and debtors-in-possession (the "**Debtors**" or the "**Companies**") to employ and retain CRCMS as its sole and exclusive investment banker (the "**Application**"), filed contemporaneously herewith. To provide investment banking services, I have qualified as a General Securities Representative (S7), Investment Banking Representative (S79), and as a General Securities Principal (S24) under FINRA licenses. In addition, I have been designated a Certified Turnaround Professional by the Turnaround Management Association. Except as indicated, I have personal knowledge of the matters set forth herein.[1]

3. CRCMS is the wholly-owned investment bank of CohnReznick, LLP ("**CR**"), and is amongst the ten largest accounting and consulting firms in the United States. Professionals at CRCMS and CR specialize in providing investment banking and restructuring advisory services to companies throughout many industries. For instance, CRCMS's professionals have provided investment banking and financial advisory services in the following bankruptcy matters: Greek Peak Mountain Resorts (Northern District of New York/Syracuse), Nutrition 21 (Southern District of New York/White Plains), Borders (Southern District of New York), Dial-A-Mattress (Eastern District of NY), Freedom Communications (District of DE), Greektown Holdings (Eastern District of Michigan), and Cardiac Management Systems (Southern District of Florida), among others. In addition, certain CRCMS professionals who may be working on this matter have significant experience serving as restructuring advisors to financially troubled companies in chapter 11.

---

[1] Certain of the disclosures herein relate to matters within the personal knowledge of other professionals at CRCMS and are based on information provided by them, or on the review of CRCMS's relevant files and business records.

3. CRCMS is able to assist the Debtors in their bankruptcy efforts efforts. CRCMS is well-qualified to provide its services to the Debtors in a cost-effective, efficient and timely manner. CRCMS is willing to act on behalf of the Debtors and subject itself to the jurisdiction and supervision of the Court. Additionally, CRCMS will coordinate with the Debtors and the other retained professionals in this chapter 11 case to eliminate unnecessary duplication or overlap of work.

4. CRCMS was retained by the Debtors in accordance with the engagement agreement, dated January 9, 2015 between the Debtors and CRCMS, a complete and authentic copy of which is attached hereto as **Exhibit 1** (the "**Engagement Agreement**"), to provide investment banking services relating to a potential transaction.

5. CRCMS, nor any employee thereof, has any connection with the Debtors, their respective attorneys and accountants, parties-in-interest (as reasonably known to CRCMS), the United States Trustee for the District of Arizona, or any person employed in the office of the United States Trustee.

6. I have reviewed the twenty largest creditors for each of the Debtors and, insofar as I have been able to determine after reasonable inquiry, CRCMS and the CRCMS professionals who will work on this engagement do not hold or represent any interest adverse to the Debtors or their estates, and CRCMS is a "disinterested person" as that term is defined in § 101(14) of the Bankruptcy Code, as modified by § 1107(b) of the Bankruptcy Code, in that CRCMS:

    a. is not a creditor, equity security holder, or insider of the Debtors;

    b. is not and was not, within two years before the date of filing of the Debtors' chapter 11 petition, a director, officer or employee of the Debtors; and

    c. does not have an interest materially adverse to the Debtors, their respective estates, or any class of creditors or equity security holders by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

7. If CRCMS discovers any information that is contrary to or pertinent to the statements made herein, CRCMS will promptly disclose such information to this Court and the creditors of the Debtors.

8. As more fully described in the amended Engagement Agreement, at the request and direction of the Debtors, CRCMS will provide financial services and advice primarily in arranging a potential expedited sale of essentially all of SkyMall's assets under § 363 of the Bankruptcy Code. CRCMS will not perform any financial advisory services that would be duplicative of any other professional retained by the Debtors.

9. Highlights of CRCMS's services will include, to the extent requested by the Debtors:[2] (a) identifying opportunities for the sale of the Debtors' assets and businesses; (b) pursuing the sale of the Debtors; (c) advising the Debtors concerning opportunities for such sales; (d) as requested by the Debtors, participating in negotiations concerning such sale; and (e) advising the Debtors on other matters that may arise from time to time during this engagement.

10. CRCMS intends to charge for its professional services, seek expense reimbursement and receive indemnification for services rendered to the Debtors in their Chapter 11 cases pursuant to the terms and conditions of the Engagement Agreement, as may be modified by the terms of any orders of this Court.

11. In summary, under the terms of the Engagement Agreement and subject to this Court's approval, highlights of CRCMS's fees include:

    a. **Initial Retainer.** An initial fee of $50,000, payable upon the execution of this Agreement. The Debtors paid this retainer on January 5, 2015.

    b. **Second Retainer.** An additional fee of $25,000, payable on or about February 16, 2015.

---

[2] Capitalized terms not defined herein shall have the meaning given to them the Engagement Agreement.

c. **Transaction Fee.** Upon consummation of the sale, subject to the court's review and approval, on or about the closing the Debtors shall cause to pay CRCMS the greater of $200,000, or the following percentages applied to the Consideration involved in the sale:

| Consideration | Percentage |
| --- | --- |
| Up to $5.0 million | 5.00% |
| Consideration over $5.0 million | 3.00% |

12. In addition to any of the foregoing fees for professional services, the Debtors have agreed to pay, as requested from time to time, CRCMS's direct and reasonable out-of-pocket expenses (including document and presentation material expenses) incurred in carrying out its duties under this engagement. Such out-of-pocket expenses shall be subject to court review and approval.

13. This fee structure is consistent with the customary billing practices of CRCMS for comparably sized and complex cases involving the services to be provided in these chapter 11 cases. CRCMS believes that the foregoing compensation arrangements are both reasonable and market-based. To induce CRCMS to do business with the Debtors in bankruptcy, the compensation structure described above was established to reflect the difficulty of the extensive assignments CRCMS expect to undertake and the potential for failure. Further, the fee structure set forth in the Engagement Agreement was agreed upon by the parties thereto in anticipation that a substantial commitment of professional time and effort would be required of CRCMS, and in light of the fact that such commitment may foreclose other opportunities for CRCMS, and that the actual time and commitment required of CRCMS and its professionals to perform its services hereunder may vary substantially from week to week.

14. In sum, in the light of the foregoing and given the numerous issues that CRCMS may be required to address in the performance of its services hereunder, CRCMS's commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for CRCMS's services for engagements of this nature both out-of-court and in a

1 | chapter 11 context, CRCMS believes that the fee structure described in the Engagement
2 | Agreement and herein is market-based and fair and reasonable under the standards set forth in
3 | section 328(a) of the Bankruptcy Code.

4 |     15.    It is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. Indeed, in the ordinary course of its business, CRCMS does not charge for its services on an hourly basis. CRCMS seeks a waiver of the requirement to bill in detail in tenths (0.1) of an hour. In lieu thereof, and as an accommodation to the Court, CRCMS proposes that its professionals will maintain time records, to the best of their ability, in quarter-hour increments.

16. CRCMS acknowledges that the Bankruptcy Court must approve its fees in order to be compensated. In that regard, CRCMS intends to file an application with the Court for allowance of compensation and reimbursement of expenses in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any order of this Court establishing procedures for monthly compensation and reimbursement of expenses for professionals.

17. CRCMS received the $50,000 initial retainer on January 5, 2015. CRCMS has not received any expense reimbursement from the Debtors during the ninety (90) day period prior to the date on which these Chapter 11 cases were commenced.

18. No agreement or understanding in any form or guise exists between CRCMS and any other person for a division of compensation for services rendered in or in connection with this case, and no such division of compensation prohibited by 11 U.S.C. § 504 will be made, except among members of CRCMS.

19. The terms and conditions of the Engagement Agreement, including the indemnification provisions, were negotiated by the Debtors and CRCMS at arm's length and in good faith. CRCMS submits that the indemnification provisions contained in the Engagement Agreement are customary and reasonable for investment banking engagements, both out-of-court

1 and in chapter 11 cases, and viewed in conjunction with the other terms of CRCMS's proposed
2 retention, are reasonable.

3     20.     The proposed employment of CRCMS is not prohibited by or improper under
4 Bankruptcy Rule 5002. CRCMS and the professionals it employs are qualified to represent the
5 Debtors in the matters for which CRCMS are proposed to be employed.

6     I declare under penalty of perjury that the forgoing is true and correct.

7     Executed this 23d day of January, 2015.

                                JEFFREY R. MANNING
                                MANAGING DIRECTOR