Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Proposed Attorneys for Debtors and Debtors-in-Possession

John A. Harris (#014459)
john.harris@quarles.com
Robert P. Harris (#011523)
robert.harris@quarles.com
Lori L. Winkelman (#021400)
lori.winkelman@quarles.com
Jason D. Curry (#026511)
jason.curry@quarles.com

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SKYMALL, LLC,<br><br>Debtor.<br><br>Joint Administration pending with:<br><br>XHIBIT CORP.,<br>XHIBIT INTERACTIVE, LLC,<br>FLYREPLY CORP.,<br>SHC PARENT CORP.,<br>SPYFIRE INTERACTIVE, LLC,<br>STACKED DIGITAL, LLC, and<br>SKYMALL INTERESTS, LLC. | In Proceedings Under Chapter 11<br><br>Case No. 2:15-bk-00679-BKM<br><br>Joint Administration pending with Case Nos.:<br>2:15-bk-00680-MCW<br>2:15-bk-00682-MCW<br>2:15-bk-00684-DPC<br>2:15-bk-00685-MCW<br>2:15-bk-00686-MCW<br>2:15-bk-00687-GBN<br>2:15-bk-00686-EPB |
| This Pleading applies to:<br><br>☐ All Debtors<br>☑ Specified Debtor<br><br>SKYMALL, LLC | **MOTION FOR ORDERS (I) AUTHORIZING BIDDING PROCEDURES AND AUCTION, (II) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF, (III) AUTHORIZING SALE OF ASSETS, AND (IV) GRANTING RELATED RELIEF**<br><br>**Hearing Date: January 27, 2015**<br>**Hearing Time: 1:30 P.M.** |

SKYMALL, LLC, *et al.*, the debtors and debtors-in possession (the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Bankruptcy Cases**"), hereby move this Court for entry of orders (i) authorizing a sale of the Subject Assets (defined below) of Debtor SkyMall, LLC ("**SkyMall**") free and clear of all claims, liens, encumbrances, and other interests pursuant to Bankruptcy Code § 363(f) through an auction sale as described herein, (ii) in conjunction with the sale, approving the assumption and assignment of certain executory contracts and unexpired leases, (iii) authorizing bidding and related sale procedures for the auction sale, (iv) scheduling a sale hearing and approving notice thereof, and (v) granting related relief as detailed herein.

This Motion is supported by the following Memorandum of Points and Authorities, the *Declaration Of Scott Wiley In Support Of First Day Motions* (the "**First Day Declaration**"), and the entire record before the Court in these Bankruptcy Cases.

RESPECTFULLY SUBMITTED this 23rd day of January, 2015.

> QUARLES & BRADY LLP
> Renaissance One
> Two North Central Avenue
> Phoenix, AZ 85004-2391
>
> By /s/ *John A. Harris*
>     John A. Harris
>     Robert P. Harris
>     Lori L. Winkelman
>     Jason D. Curry
>
> Proposed Attorneys for Debtors and Debtors-in-Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. BACKGROUND.

1. On January 22, 2015 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court for relief under Chapter 11 thereby commencing the Bankruptcy Cases.[1]

2. The Debtors continue to operate their businesses and manage their assets and affairs as debtors in possession under Bankruptcy Code §§ 1107 and 1108.

3. The Court has jurisdiction over these Bankruptcy Cases under 28 U.S.C. §§ 157 and 1334. This Motion presents a core proceeding under 28 U.S.C. § 157(b)(2).

4. The Debtors' principal place of business is located in Maricopa County, Arizona. Accordingly, venue of the Bankruptcy Cases is proper in the District of Arizona under 28 U.S.C. §§ 1408 and 1409.

5. The statutory predicates for the relief requested in this Motion are Bankruptcy Code §§ 105, 363 and 365.

6. No trustee or examiner has been appointed in these Bankruptcy Cases, nor has an official committee of unsecured creditors been established.

7. The general background relevant to the Debtors and this Motion is stated in the First Day Declaration, which is incorporated herein by this reference.

8. The Debtors have filed this Motion seeking authority to market and sell substantially all assets of SkyMall (collectively, the "**Subject Assets**") through an auction process as provided herein. The Subject Assets include, without limitation, SkyMall's (i) intellectual property, (ii) furniture, fixtures and equipment, (iii) inventory, (iv) customer lists, (v) accounts receivable, (vi) interests under contracts and unexpired leases, (vii) interests in real estate and fixtures, and (viii) other assets comprising SkyMall's going concern business. The Subject Assets

---

[1] Unless otherwise indicated, all chapter and section references in this Motion are to Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. All "Rule" references are to the Federal Rules of Bankruptcy Procedure.

will not include, however, the following excluded assets (collectively, the "**Excluded Assets**"): (i) cash, security deposits, or other cash equivalents; (ii) avoidance actions pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 549, and 553(b) and any proceeds therefrom; and (iii) certain other estate claims and causes of action. The Debtors may request approval pursuant to this Motion to sell all or part of the Subject Assets through the auction process to one or more buyers.

9. As discussed in the First Day Declaration, SkyMall attempted throughout the fourth quarter of 2014 to obtain additional operating capital. SkyMall explored various financing alternatives for both near-term and for longer term financing, but was unable to attract the necessary working capital on terms or in amounts sufficient to meaningfully address its liquidity needs.

10. Before the commencement of the Bankruptcy Cases, the Debtors retained the investment banking firm of CohnReznick Capital Market Securities, LLC ("**CRCMS**") to explore and pursue a possible sale or other strategic options for the Debtors to, among other things, maximize the value of the SkyMall assets.

11. CRCMS believes that SkyMall's assets are likely to be substantially more valuable if they can be marketed and sold as a going concern. Accordingly, the Debtors are attempting to sustain their scaled-down business operations as a going concern during the contemplated sale process.

12. An expeditious sale process is very important. Based on the cash reserves SkyMall has as of the Petition Date and the Debtors' projection of the likely business and revenue performance of the scaled-down SkyMall business operations, the Debtors believe that they can maintain the SkyMall business operation during the contemplated marketing and sale process. However, because of the substantial risks and uncertainties regarding continued business operations, it is critical that the marketing and sale process is completed within the contemplated

time frame. (The Debtors propose that the sale process will go forward whether or not the Debtors are able to continue the SkyMall business as a going concern through the scheduled sale.)

13. At this point, the Debtors have not approved a stalking horse agreement for the sale of the Subject Assets. The Debtors reserve the right to request the Court to approve a proposed stalking horse agreement (and address any request for bid protections by a stalking horse bidder) before the auction after marketing efforts by CRCMS.

**II.    PROPOSED BIDDING PROCEDURES AND AUCTION.**

14. The Debtors will pursue a marketing effort in an effort to attract competing bidders for an auction (the "**Auction**") to select the highest and/or best bid (or bids). The Debtors propose to hold the Auction on **March 24, 2015.**

15. The Debtors propose the following timeline for the sale process, Auction, and hearing on the approval of the sale:

| | |
|---|---|
| Deadline for Debtors to Identify Any Stalking Horse Bid[2] | March 12, 2015 |
| Deadline for Prequalification Submissions by Bidders | March 17, 2015 |
| Deadline for Submission of Bids | March 19, 2015 |
| Auction Date | March 24, 2015 |
| Sale Hearing | March 26, 2015 (subject to Court's calendar) |
| Sale Closing | April 15, 2015 |

16. Pursuant to this Motion, the Debtors seek entry of a Sale Procedures Order in the form attached hereto as **Exhibit A**. Among other things, the proposed Sale Procedures Order

---

[2] If the Debtors identify a Stalking Horse Bid, the Debtors will request that the Court hold a hearing prior to the Auction to consider approval of that bid as a Stalking Horse Bid, and to consider any bid protections requested by the party making the Stalking Horse Bid.

-5-

authorizes bidding and related sale procedures for the proposed Auction as set forth in Exhibit 1 to the Sale Procedures Order (the "**Sale Procedures**").

17. The primary terms of the proposed Sale Procedures are summarized as follows:[3]

    a. <u>Overview of the Process</u>. The Debtors intend, with the assistance of CRCMS, to market the opportunity to purchase the Subject Assets as widely as possible. The process contemplates that bidders will conduct their due diligence prior to making bids for the Subject Assets on an as is/where is basis, and that the qualified bids will not contain any material due diligence or financing contingencies.

    b. <u>Right to Determine Highest and Best Bid</u>. The Debtors, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), if appointed, will have the sole and exclusive right to negotiate any offer made for the purchase of the Subject Assets and to determine the highest and best offer, subject to bankruptcy court review and approval. In evaluating whether a bidder has submitted the highest and best offer, the Debtors may consider, among other things: (i) the purchase price proposed in the offer; (ii) the bidder's financial condition and ability to close; (iii) any proposed modifications to the Asset Purchase Agreement template that will be provided by the Debtors (the "**APA Template**"), including any contingencies that must be satisfied prior to closing; and (iv) the probability that a prompt closing will occur.

    c. <u>Stalking Horse Agreement</u>. The Debtors reserve the right to request the Court to later approve a proposed Asset Purchase Agreement as a stalking horse agreement (the "**Stalking Horse Bid**"). Any such request by the Debtors will be filed with the Court on or before March 12, 2015.

    d. <u>Prequalification</u>. On or before March 17, 2015, prospective bidders are required to submit certain information to the Debtors to demonstrate the financial wherewithal to consummate the potential transaction under the terms and conditions of these Sale Procedures. The Debtors, in consultation with the Committee, shall have sole discretion to determine that a bidder is prequalified ("**Prequalified Bidder**").

    e. <u>Due Diligence Requests</u>. Due diligence inquiry will be directed to CRCMS. Each bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid.

    f. <u>Deadline for Submission of Bids.</u> The deadline for submitting all bids is March 19, 2015 ("**Bid Deadline**").

---

[3] The summary of the Sale Procedures stated in this Motion does not modify or limit the proposed Sale Procedures or Sale Procedures Order, which control over the summary of primary terms contained herein.

g. <u>Submission of Bids</u>.  All bids will provide that they are subject to the approval of the Bankruptcy Court.  A bid to purchase the Subject Assets must be written in electronic form submitted only by a Prequalified Bidder, and must include (among other things) a required deposit for a bid (a "**Deposit**") of $500,000, and an executed Asset Purchase Agreement based on a template that will be provided by the Debtors.

h. <u>Qualification of Bid</u>.  After a Prequalified Bidder has delivered a bid as provided above, the Debtors, in consultation with their advisors and the Committee, will determine whether the Prequalified Bidder (i) has demonstrated the financial capacity to consummate the purchase of the Subject Assets, (ii) is reasonably likely to be able to and willing to consummate the proposed transactions, and (iii) has otherwise timely satisfied the requirements described in the prior paragraph.  If so, the Debtors will designate a Prequalified Bidder as a "<u>Qualified Bidder</u>" and such bid as a "**Qualified Bid**."

i. <u>Auction</u>.  In the event the Debtors receive two or more Qualified Bids (including the Stalking Horse Bid, if any), the Debtors will conduct an auction sale (the "**Auction**") at which the parties that have submitted Qualified Bids (including the Stalking Horse Bid, if any) may participate.  If necessary, the Auction will be held on March 24, 2015 at 10:00 a.m. (Mountain Standard Time), or such later time as the Debtors may designate.  CRCMS will direct and preside over the Auction at the direction of the Debtors, in consultation with their other advisors and the Committee.  The Debtors may, in their discretion, offer the Subject Assets for sale by the lot or in bulk.

j. <u>Prevailing Bidder(s)</u>.  For its Qualified Bid to be considered, a duly authorized representative of a Qualified Bidder must appear in person at the Auction, unless alternative arrangements satisfactory to the Debtors have been made.  The Auction will commence with the announcement of the highest Qualified Bid for each lot and for the bulk sale of the Subject Assets, and bidding will proceed in such manner and on such terms as are announced by the Debtors at the time of the Auction.  Among other things, the Debtors may establish a minimum bidding increment at the Auction.  At the conclusion of the Auction the Debtors will announce the highest bid combination (the "**Prevailing Bidder**" or "**Prevailing Bidders**").  The Debtors, in consultation with their advisors and the Committee, may conduct the Auction in the manner they believe will be in the best interests of the estate.  Each Prevailing Bidder will be required to increase the Deposit under its Asset Purchase Agreement to at least 10% of the bid no later than the time of the Sales Hearing.

k. <u>Backup Bids</u>.  If for any reason the Prevailing Bidder fails to timely close the sale of the Subject Assets, the Debtors will have the right to close the sale of the Subject Assets pursuant to the Qualified Bid(s) designated at the Auction as the second highest and best offer (the "**Backup Bid(s)**") and approved by the Court at the Sale Hearing.

l. <u>Sale Hearing</u>.  There will be a hearing (the "**Sale Hearing**") to consider any objections to the Sale Motion and to approve the sale of the Subject Assets (and related assignments of executory contracts and unexpired leases) to the Prevailing Bidder or Prevailing Bidders.

-7-

Case 2:15-bk-00679-BKM    Doc 22    Filed 01/23/15    Entered 01/23/15 12:43:48    Desc
Main Document    Page 7 of 13

18.     In addition to the approval of the Sale Procedures, the Debtors also request that the Court schedule the Sale Hearing and related objection deadlines, and approve a notice regarding the Auction and a notice to parties to executory contracts and unexpired leases that may be assigned in conjunction with the sale.

## III.  RELIEF REQUESTED.

Through this Motion, the Debtors seek the entry of two orders. First, the Debtors seek entry of the Sale Procedures Order in the form attached hereto as Exhibit A, approving the proposed Sale Procedures, scheduling the Sale Hearing, and granting related relief. Second, the Debtors request that the Court enter an Order approving the sale of some or all of the Subject Assets free and clear of all claims, liens, encumbrances, and other interests to the Prevailing Bidder(s) at the Auction and granting related relief as described herein.

## IV.  BASIS FOR RELIEF REQUESTED.

### A.  The Debtors Are Pursuing A Sale Of The Subject Assets In The Sound Exercise Of Their Business Judgment.

Bankruptcy Code § 363(b)(1) provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . " 11 U.S.C. § 363(b)(1). As a general rule, so long as a debtor in possession demonstrates a sound business purpose for doing so, it should be authorized to sell assets outside the ordinary course of business pursuant to Section 363(b)(1). *See In re Walter*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988); *In re Lahijani*, 325 B.R. 282, 288-89 (B.A.P. 9th Cir. 2005) (With respect to a proposed sale under Section 363(b), "[o]rdinarily, the position of the trustee is afforded deference, particularly where business judgment is entailed in the analysis . . . ."); *In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979 (Bankr. W.D. Wash. 1997) ("The Court may approve the [proposed sale] if [the debtor] has established some articulated business justification for the transaction.") (internal quotations omitted); *In re Work Recovery, Inc.*, 202 B.R. 301, 303-04 (Bankr. D. Ariz. 1996). When considering a decision made in the debtor's business judgment,

bankruptcy courts "should presume that that the debtor-in-possession acted prudently, on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the bankruptcy estate." *In re Pomona Valley Med. Grp., Inc.*, 476 F.3d 665, 670 (9th Cir. 2007) (discussing the general concepts behind the business judgment rule while considering a debtor's motion to reject an executory contract).

There are ample grounds to support a finding that the Debtors are pursuing the sale of the Subject Assets in good faith, and in a proper exercise of their business judgment. As established by the First Day Declaration, while the Debtors believe that the remaining SkyMall business may be continued as a going concern during the proposed sale process, the Debtors do not have the necessary operating capital to continue the business over the long term. A sale of the Subject Assets through an auction process provides the best opportunity to maximize the value of the Subject Assets for the benefit of the SkyMall estate and creditors. It is clear that the Debtors' decision to market and sell the Subject Assets through the Auction sale, conducted by a prominent investment banking firm retained by the Debtors for this purpose, is a sound business decision that should be approved by the Court.

B. The Proposed Sale Procedures Are Fair And Reasonable.

The Debtors have proposed Sale Procedures to govern the auction sale of the Subject Assets. Bid procedures are appropriate when they enhance bidding and are designed to maximize sale proceeds under the particular circumstances of a reorganization case. *In re Blixseth*, No. BKR. 09-60452-7, 2010 WL 716198, at *8 (Bankr. D. Mont. Feb. 23, 2010); *In re Golden Empire Air Rescue, Inc.*, No. BAP EC-07-1086, 2007 WL 7540946, at *7 (B.A.P. 9th Cir. Oct. 25, 2007) (citing to *In re Lahijani*, 325 B.R. at 288-89); *see also Toibb v. Radloff*, 501 U.S. 157, 163, 111 S. Ct. 2197, 2201, 115 L. Ed. 2d 145 (1991) (The general policy behind the Bankruptcy Code is to "maximi[ze] the value of the bankruptcy estate").

The Sale Procedures proposed by the Debtor are designed to allow the Subject Assets to be marketed broadly. The Sale Procedures provide a reasonable and prudent framework for the

Debtors to entertain competing bids and, if such bids are received, to allow the Auction to be conducted in a fair fashion to encourage participation by financially capable bidders.

The Sale Procedures also establish a fair and reasonable procedure to address any issues regarding executory contracts and unexpired leases that may be assigned in conjunction with a sale of the Subject Assets (the "**Subject Contracts and Leases**"). In this regard, the proposed Sale Procedures Order establishes a procedure to provide appropriate notice to counterparties to Subject Contracts and Leases, and an appropriate opportunity to address any Cure Costs owing under Subject Contracts and Leases, or any objections to any proposed assignment in accordance with Bankruptcy Code § 365(f).

The proposed Sale Procedures are reasonable for the Auction sale proposed by the Debtors, are typical of type of sale procedures often approved by Bankruptcy Courts for similar sales, and should be approved by the Court.

C. The Proposed Sale Of The Subject Assets Satisfies The Requirements Of Section 363(f) For A Sale Free And Clear Of Claims, Liens, Encumbrances, And Other Interests.

The Debtors are requesting to sell the Subject Assets free and clear of claims, liens, encumbrances, and other interests (with liens (if any) to attach to the proceeds of the sale) pursuant to Bankruptcy Code § 363(f). Section 363(f) provides as follows:

> (f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

As discussed in the First Day Declaration, the Subject Assets are largely unencumbered. Accordingly, among other Section 363(f) grounds, the expected purchase price far exceeds the amount of any liens encumbering any of the Subject Assets. A sale of the Subject Assets free and clear of liens under Section 363(f)(3) is thus proper and justified.[4]

### D. The Proposed Assignment Of Subject Contracts And Leases Satisfies The Requirements of Section 365(f).

In conjunction with the proposed sale of the Subject Assets, the Debtors request authority pursuant to Bankruptcy Code § 365(f)(2) for SkyMall to assume and assign its interests under any Subject Contracts and Leases that the Prevailing Bidder(s) elect to have assigned. Section 365(f)(2) provides as follows:

> (2) The trustee may assign an executory contract or unexpired lease of the debtor only if—
>
> (A) the trustee assumes such contract or lease in accordance with the provisions of this section; and
>
> (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

As stated above, the Sale Procedures establish a fair and reasonable procedure to address any issues regarding the assignment of the Subject Contracts and Leases. To the extent necessary, the Debtors will address at the Sale Hearing any objection to the assumption and assignment of any Subject Contract and Lease, and will establish that the requirements for assignment under Section 365(f)(2) have been fully satisfied.[5]

---

[4] The Debtors reserve the right to assert that any of the other Section 363(f) requirements also are satisfied with respect to any particular lien that is asserted by any creditor.

[5] Generally, the financial ability and willingness to perform the post-assignment obligations under the assumed and assigned contracts by the successful bidder will constitute sufficient "adequate assurance of future performance" to justify the proposed assumption and assignment. *In re PRK Enterprises, Inc.*, 235 B.R. 597, 603 (Bankr. E.D. Tex. 1999); *In re THW Enterprises, Inc.*, 89 B.R. 351, 357 (Bankr. S.D.N.Y. 1988).

### E. The Debtors Request That The Court Determine That The Prevailing Bidder Is A "Good Faith" Purchaser Under Section 363(m).

When a bankruptcy court enters an order approving a sale under Section 363(b)(1), the court may make a finding that the purchaser is a "good faith" purchaser under Bankruptcy Code § 363(m). *In re Onouli-Kona Land Co.*, 846 F.2d 1170, 1174 (9th Cir. 1988). Section 363(m) protects the rights of good faith purchasers at a sale under Section 363. *In re Ewell*, 958 F.2d 276, 279 (9th Cir. 1992). A "good faith purchaser" is not defined by the Bankruptcy Code; however, the Ninth Circuit defines a lack of good faith as fraudulent conduct during the sale proceedings that "involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Suchy*, 786 F.2d 900, 902 (9th Cir. 1985). Where a party has purchased estate property in good faith, Section 363(m) supports the "policy of finality" encouraged by bankruptcy courts and protects the finality of the sale. *In re Onouli-Kona Land Co.*, 846 at 1172.

The Debtors will request at the Sale Hearing that the Prevailing Bidder is a "good faith" purchaser for purposes of Section 363(m).

### F. The Sale Of The Subject Assets Does Not Require The Appointment Of A Consumer Privacy Ombudsman.

Bankruptcy Code § 363(b)(1) provides that a debtor may not sell or lease personally identifiable information about individuals as part of a sale under Section 363(b) if the debtor has a policy prohibiting the transfer of such personally identifiable information unless certain requirements are met (one of which involves the appointment of a consumer privacy ombudsman). In this case, the Subject Assets include customer lists that contain personally identifiable information, but SkyMall's policies to not prohibit the transfer of such information. Accordingly, the appointment of a consumer privacy ombudsman is not required in conjunction with the proposed sale. *See, e.g.*, *In re Tridimension Energy, L.P.*, No. 10-33565-SGJ, 2010 WL 5209236, at *6 (Bankr. N.D. Tex. Nov. 19, 2010) ("The Debtors have never disclosed a policy to

an individual prohibiting the transfer of personally identifiable information about individuals to persons that are not affiliated with the Debtors . . . . Thus, there is no requirement that the sale of the Properties contemplated hereunder be consistent with any privacy policy or that a consumer privacy ombudsman be appointed in connection with same under Bankruptcy Code § 363(b)(1).")

**V.    CONCLUSION.**

Based on the foregoing, the Debtors respectfully request that the Court (i) enter the proposed Sale Procedures Order in the form attached hereto as Exhibit A, (ii) enter an Order approving the sale of some or all of the Subject Assets free and clear of all claims, liens, encumbrances, and other interests to the Prevailing Bidder(s) at the Auction and granting the related relief requested herein, and (iii) granting such other and further relief as the Court deems just and appropriate under the circumstances.

RESPECTFULLY SUBMITTED this 23rd day of January, 2015.

QUARLES & BRADY LLP
Renaissance One
Two North Central Avenue
Phoenix, AZ  85004-2391

By /s/ *John A. Harris*
   John A. Harris
   Robert P. Harris
   Lori L. Winkelman
   Jason D. Curry

Proposed Attorneys for Debtors and Debtors-in-Possession