ORDERED ACCORDINGLY.

Dated: February 25, 2015



Brenda K. Martin, Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| In re: | In Proceedings Under Chapter 11 |
|---|---|
| SKYMALL, LLC, | Case No. 2:15-bk-00679-BKM |
| Debtor. | |
| Joint Administration pending with: | Joint Administration pending with Case Nos.: |
| XHIBIT CORP., XHIBIT INTERACTIVE, LLC, FLYREPLY CORP., SHC PARENT CORP., SPYFIRE INTERACTIVE, LLC, STACKED DIGITAL, LLC, and SKYMALL INTERESTS, LLC. | 2:15-bk-00680-BKM 2:15-bk-00682-BKM 2:15-bk-00684-BKM 2:15-bk-00685-BKM 2:15-bk-00686-BKM 2:15-bk-00687-BKM 2:15-bk-00686-BKM |
| This Pleading applies to: ☐ All Debtors ☒ Specified Debtor  SKYMALL, LLC | **AMENDED STIPULATED ORDER ESTABLISHING BIDDING PROCEDURES FOR AUCTION SALE, SCHEDULING HEARING ON SALE MOTION, AND GRANTING RELATED RELIEF**  (AMENDING ONLY THE AUCTION SALE DATE) |

This matter came before the Court pursuant to the *Motion For Orders (I) Authorizing Bidding Procedures And Auction, (II) Scheduling Sale Hearing And Approving Notice Thereof, (III) Authorizing Sale Of Assets, And (IV) Granting Related Relief* [Docket No. 22] (the "**Sale**

QB\33379698.1

**Motion**") filed by SKYMALL, LLC, *et al.*, the debtors and debtors-in possession (collectively, the "**Debtors**") in the above-captioned Chapter 11 cases (the "**Bankruptcy Cases**"). In the Sale Motion, the Debtors request that the Court authorize a sale of substantially all of the assets of Debtor SkyMall, LLC ("**SkyMall**") (except for certain Excluded Assets) free and clear of all claims, liens, encumbrances, and other interests pursuant to Bankruptcy Code § 363(f) (with liens (if any) to attach to the proceeds of the sale). Among other relief, the Debtors request in the Sale Motion that the Court authorize bidding and related sale procedures for the proposed auction sale as set forth in **Exhibit 1** to this Order (the "**Sale Procedures**"), schedule a hearing on the Sale Motion, and grant certain related relief.[1]

On January 27, 2015, the Court held an initial hearing on the Sale Motion (the "**Procedures Hearing**") to consider approval of the proposed Sale Procedures and related matters. Based on the Sale Motion, the First Day Declaration submitted by the Debtors, the argument of counsel, and the entire record before the Court in the Bankruptcy Cases, the Court hereby finds and concludes as follows:

A. The Court has jurisdiction to consider the Sale Motion under 28 U.S.C. §§ 157 and 1334, and the Sale Motion presents a core proceeding under 28 U.S.C. § 157(b)(2);

B. Notice of the Sale Motion and the Procedures Hearing was proper and adequate under the circumstances of these Bankruptcy Cases;

C. Entry of this Order is in the best interests of the Debtors, their creditors, and their estates;

D. The Sale Procedures are fair, reasonable and appropriate for the proposed sale, and are designed to maximize the recovery with respect to the Subject Assets;

E. The Debtors have demonstrated compelling and sound business reasons for the Sale Procedures and the Auction; and

---

[1] Unless stated otherwise herein, terms defined in the Sale Motion and the Sale Procedures, as applicable, will have the same meanings when used in this Order.

F. The Debtor asserts that the proposed sale of the Subject Assets pursuant to the Sale Motion does not require the appointment of a consumer privacy ombudsman pursuant to Bankruptcy Code §363(b)(1). The United States Trustee has not had the opportunity to review any of the Debtors' privacy policies to determine whether a consumer privacy ombudsman is required in this case. As such, the United States Trustee has reserved the right for any and all parties to file a motion requesting the appointment of a consumer privacy ombudsman as provided below in this Order

Based on the foregoing, and the entire record before the Court,

IT IS HEREBY ORDERED as follows:

1. The Sale Motion shall be, and hereby is, granted in part as provided herein. Any objections to the Sale Procedures shall be, and hereby are, overruled.

2. The Sale Procedures (attached hereto as Exhibit 1 and incorporated herein by this reference) shall be, and hereby are, approved. The Debtors are hereby authorized to conduct an auction of the Subject Assets pursuant to the Sale Procedures and this Order.

3. Any objection to the Sale Motion or any motion by the United States Trustee (or any other party) for the appointment of a consumer privacy ombudsman in conjunction with the proposed sale under the Sale Motion shall be in writing and filed with the Court on or before **March 4, 2015** (the "**Sale Objection Deadline**"), and served on counsel for the Debtors so that such objection or motion is received on or before the Sale Objection Deadline. (The Court will consider any objections to the Sale Motion at the Sale Hearing (defined below); the Debtors will request that the Court consider any motion for the appointment of a consumer privacy ombudsman promptly, and in all events prior to the Auction.)

4. Any responses in support of the Sale Motion shall be in writing and filed with the Court on or before **March 18, 2015** (the "**Sale Response Deadline**").

5. After the Auction has been concluded, the Court shall conduct a hearing (the "**Sale Hearing**") on the Sale Motion to consider, among other things, approval of the prevailing bid (or

-3-

bids) at the Auction. The Sale Hearing shall be held on **March 27, 2015 at 10:00 o'clock a.m.** at the United States Bankruptcy Court, Courtroom 701, 230 N. First Avenue, Phoenix, AZ 85003.

6. Within three (3) business days after entry of this Order, the Debtors shall serve a copy of this Order on all parties on the "Official Service List" established by the Court.

7. On or before February 20, 2015, the Debtors shall serve a notice (the "**Cure Notice**") and a copy of this Order on the counterparties (each a "**Counterparty**") to executory contracts and unexpired leases that may be assigned in conjunction with a sale of the Subject Assets (the "**Subject Contracts and Leases**").[2] The Cure Notice shall, for each Subject Contract or Lease, (i) identify the Subject Contract or Lease, (ii) identify the Counterparty to such Subject Contract or Lease, and (iii) identify the Debtors' contention regarding any amounts owing under such Subject Contract or Lease due to any defaults (the "**Cure Amount**"). (The Debtors may later serve the Cure Notice on other Counterparties if any bidder expresses interest in any other executor contracts or unexpired leases.)

8. The Cure Notice shall be deemed good and sufficient notice regarding a proposed assumption and assignment of the Subject Contracts and Leases in conjunction with a sale of the Subject Assets.

9. A Counterparty must file with the Court and serve on Debtors' counsel any objection to the assumption and assignment of a Subject Contract or Lease, including objections with respect to Cure Amount, on or before **March 4, 2015** (the "**Contract Objection Deadline**").

10. In the event that an objection to any Cure Amount is timely filed by a Counterparty, such Counterparty's objection must set forth (i) the basis for the objection, (ii) with specificity, the amount the Counterparty asserts as the Cure Amount, and (iii) appropriate documentation in support of the alleged alternative Cure Amount. In the event that the Debtors

---

[2] The inclusion of any agreement as a Subject Contract and Lease does not constitute an admission by the Debtors that such agreement actually constitutes an executory contract or unexpired lease under the Bankruptcy Code, and the Debtors expressly reserve the right to challenge the status of any agreement included as a Subject Contract and Lease.

and the Counterparty cannot consensually resolve the Counterparty's objection to the Cure Amount, the Prevailing Bidder or any other assignee will segregate any disputed cure amounts pending the resolution of any such disputes by this Court or mutual agreement of the parties.

11. Any Counterparty failing to timely file an objection to the Cure Amount set forth in the Cure Notice shall be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts against the Debtors, their estates, and the Prevailing Bidder with respect to the Subject Contract or Lease to which it is a Counterparty. For the avoidance of doubt, no executory contract or unexpired lease will be assumed or assumed and assigned until and unless a transaction closes pursuant to the Sale Motion that proposes assumption and assignment of such executory contract and/or unexpired lease.

12. Without further order of the Court, the Debtors may, in consultation with the Committee: (a) reject any bid that is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Sale Procedures, or (iii) contrary to the best interests of SkyMall or its estate; (b) determine which of the Subject Assets shall be the subject of the Auction; (c) waive terms and conditions of the Sale Procedures with respect to all bidders; (d) extend deadlines set forth in the Sale Procedures; and (e) adjourn or cancel the Auction.

13. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of this Court and to have waived any right to jury trial in connection with any disputes relating to any Qualified Bid, the Auction, the Sale Procedures, and any sale pursuant to the Sale Motion.

14. The Debtors are hereby authorized to take such steps and incur such expenses as may be reasonably necessary or appropriate to effectuate the terms of this Order.

15. Notwithstanding any applicability of Bankruptcy Rules 6004 and 6006 or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**DATED AND SIGNED AS INDICATED ABOVE.**

**AGREED AS TO FORM AND CONTENT BY:**

| | |
|---|---|
| QUARLES & BRADY LLP<br>Renaissance One<br>Two North Central Avenue<br>Phoenix, AZ 85004-2391 | COOLEY LLP<br>1114 Avenue of the Americas<br>New York, NY 10036 |
| By /s/ Lori L. Winkelman<br>    John A. Harris<br>    Lori L. Winkelman | By /s/ Jeffrey L. Cohen<br>    Jeffrey L. Cohen<br>    Alex R. Velinsky |
| Counsel for Debtors and Debtors-In-Possession | Proposed Lead Counsel for the Official Committee of Unsecured Creditors |

# Exhibit "1"

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>SKYMALL, LLC,<br>               Debtor.<br><br>Joint Administration pending with:<br><br>XHIBIT CORP.,<br>XHIBIT INTERACTIVE, LLC,<br>FLYREPLY CORP.,<br>SHC PARENT CORP.,<br>SPYFIRE INTERACTIVE, LLC,<br>STACKED DIGITAL, LLC, and<br>SKYMALL INTERESTS, LLC. | In Proceedings Under Chapter 11<br><br>Case No. 2:15-bk-00679-BKM<br><br>Joint Administration pending with Case Nos.:<br>2:15-bk-00680-BKM<br>2:15-bk-00682-BKM<br>2:15-bk-00684-BKM<br>2:15-bk-00685-BKM<br>2:15-bk-00686-BKM<br>2:15-bk-00687-BKM<br>2:15-bk-00686-BKM |
| This Pleading applies to:<br>    ☐ All Debtors<br>    ☒ Specified Debtor<br>SKYMALL, LLC | **AMENDED SALE PROCEDURES (AMENDING ONLY THE AUCTION SALE DATE)** |

SKYMALL, LLC ("**SkyMall**") and the other debtors and debtors-in possession referenced above (collectively, the "**Debtors**") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on January 22, 2015, commencing the above-captioned Chapter 11 cases (the "**Bankruptcy Cases**") in the United States Bankruptcy Court for the District of Arizona (the "**Bankruptcy Court**"). The Debtors are operating their businesses and managing their affairs as debtors in possession under Bankruptcy Code §§ 1107 and 1108.

The Debtors have determined that they will solicit bids for the purchase of some or substantially all of the assets of SkyMall (the "**Subject Assets**") pursuant to Bankruptcy Code §§ 363 and 365 (a "**Sale Transaction**" or "**Sale Transactions**").[1] In this regard, the Debtors filed their *Motion For Orders (I) Authorizing Bidding Procedures And Auction, (II) Scheduling Sale Hearing And Approving Notice Thereof, (III) Authorizing Sale Of Assets, And (IV) Granting Related Relief* (the "**Sale Motion**") in the Bankruptcy Cases requesting, among other things, approval to proceed with an auction sale process. (All sales are subject to subsequent review and approval of the Bankruptcy Court as provided below.)

The Debtors are being assisted in this sale effort by their investment banker, CohnReznick Capital Market Securities, LLC ("**CRCMS**"). In furtherance thereof, the Debtors have established the sale procedures described herein (collectively, the "**Sale Procedures**") that will govern the marketing, evaluation, auction, documentation, and effectuation of a Sale Transaction or Sale Transactions. The Sale Procedures have been approved by the Bankruptcy Court through its *Order Establishing Bidding Procedures For Auction Sale, Scheduling Hearing On Sale Motion, And Granting Related Relief* dated January ___, 2015 (the "**Sale Procedures Order**").

1. **Overview of the Process.** The Debtors intend, with the assistance of CRCMS, to market the opportunity to purchase the Subject Assets as widely as possible.

2. **Selection of Highest and Best Bid.** The Debtors, in consultation with the Official Committee of Unsecured Creditors (the "**Committee**"), if appointed, shall have the sole and exclusive right to negotiate any offer made for the purchase of the Subject Assets and to provide to the Bankruptcy Court for its review and approval at the Sale Hearing, the Debtors' selection of the highest and best offer. In evaluating whether a bidder has submitted the highest and best offer, the Debtors may consider, among other things: (i) the purchase price proposed in the offer;

---

[1] The Subject Assets do not include (i) cash, security deposits, or other cash equivalents; (ii) avoidance actions pursuant to Bankruptcy Code §§ 544, 545, 547, 548, 549, and 553(b) and any proceeds therefrom; and (iii) certain other estate claims and causes of action. The Subject Assets are described in the APA Template described below.

(ii) the bidder's financial condition and ability to close; (iii) any proposed modifications to the Asset Purchase Agreement template that will be provided by the Debtors (the "**APA Template**"), including any contingencies that must be satisfied prior to closing; and (iv) the probability that a prompt closing will occur. Any proposed modification to the terms set forth in the APA Template, other than an increase in the amount of the purchase price and the deletion of terms of the Asset Purchase Agreement that are specific to the prospective bidder, may be viewed in a negative light by the Debtors. Following the deadlines for prequalification of the bidders ("**Prequalification**") and the submission of qualified bids, the Debtors intend to conduct an auction to obtain the highest and best bid or bids ("**Auction**"), followed by a sales hearing in the Bankruptcy Court to confirm the prevailing bid or combination of bids.

The process contemplates that bidders will conduct their due diligence prior to making bids for the Subject Assets on an as is/where is basis, and that the qualified bids will not contain any material due diligence or financing contingencies. Qualified Bidders shall examine or inspect the Subject Assets prior to the Auction or waive such right. **All assets are being sold as is, where is without recourse to, representation by, or warranties by, the Debtors of any kind or description whatsoever, either express or implied, including, without limitation, any warranties and/or representations of merchantability, fitness for a particular purpose, physical condition, title, possession, quiet enjoyment or the like and with all faults.** In addition, in the event that any of SkyMall's software is included in an asset sale, the Debtors make no representations or warranties regarding the Prevailing Bidder's right to use such software, as to the performance of the software, its non-infringement or otherwise. In such circumstances, the Debtors recommend that Prevailing Bidder contact the software manufacturer directly to resolve any such issues.

The Debtors are not responsible for the correct description, genuineness, authenticity, count of, or defect in any goods, and make no warranty or representation in connection therewith. No sale shall be set aside nor allowance made on account of any incorrectness, error in

QB\32634340.7    3
Case 2:15-bk-00679-BKM    Doc 131    Filed 02/25/15    Entered 02/26/15 08:34:56    Desc
Main Document    Page 10 of 17

cataloging, or any imperfection not noted.  No deductions will be allowed on damaged goods.  All goods are being exposed for public exhibit and sold "as is, where is" and without recourse.  Qualified Bidders acknowledge that they had the opportunity to inspect all assets prior to tendering their bid and waive any and all claims against the Debtors with respect thereto.

**3.     Stalking Horse Agreement.**  As of the date the Sale Procedures Order was entered, the Debtors have not approved a stalking horse agreement for the sale of the Subject Assets.  The Debtors reserve the right to request the Bankruptcy Court to later approve a proposed Asset Purchase Agreement as a stalking horse agreement (the "**Stalking Horse Bid**").  Any such request by the Debtors will be filed with the Bankruptcy Court on or before **March 12, 2015**.  The Debtors reserve the right to seek bid protections from the Bankruptcy Court upon selection of a Stalking Horse Bid.  In the event the Debtors seek such bid protections from the Bankruptcy Court, such request shall include a summary paragraph of all such protections detailing proposed bid increments, break-up fees, termination fees, and any similar provisions contained in the proposed Stalking Horse Bid asset purchase agreement and related documents.  The summary paragraph shall also include an aggregate cost to the estate(s) in the event the Stalking Horse Bid is not the prevailing bidder.

**4.     Prequalification.**  On or before **March 17, 2015**, prospective bidders are required to submit certain information to the Debtors to demonstrate the financial wherewithal to consummate the potential transaction under the terms and conditions of these Sale Procedures.  This information may include financial statements or other documents of such entity (including information on any third-party funding required to consummate and perform under the Purchase Agreement) establishing such entity's financial wherewithal to timely close the transactions contemplated thereunder.  Other than sharing information with the Committee (and its advisors), the Debtors will keep the information provided for qualification confidential.  The Debtors, in consultation with the Committee, shall have sole discretion to determine that a bidder is prequalified ("**Prequalified Bidder**").

The Debtors shall provide notice to the Committee and to the U.S. Trustee of any disqualified bidder, including a summary of reasons for disqualification (without disclosing confidential information). The Committee and the U.S. Trustee shall retain the right to file an objection with the Bankruptcy Court and request a hearing regarding the Debtors' disqualification of a proposed bidder(s).

The Bankruptcy Court shall retain the discretion to consider at the Sale Hearing an all cash purchase offer materially in excess of the bid(s) by the Prevailing Bidder(s), with no contingencies of any kind, by a bidder that participated in good faith at the Auction, with the full amount of the cash offer to be held in escrow pending closing of the sale, and subject to such other requirements as established by the Court (*e.g*., proof of corporate authority by the bidder).

**5. Due Diligence Requests.** Due diligence inquiry should be directed to CRCMS, Attn: Jeffrey R. Manning, 500 E Pratt Street, Baltimore, MD 21202; jeff.manning@crcms.com; Phone: (410) 690-8788. Each bidder is solely responsible for conducting its own due diligence and must complete its due diligence prior to the submission of its bid. Access to due diligence information will be subject to a Non-Disclosure Agreement (in form acceptable to the Debtors) between SkyMall and prospective bidders.

**6. Deadline for Submission of Bids.** The deadline for submitting all bids is **March 19, 2015** ("**Bid Deadline**"). The required materials comprising a bid for the Subject Assets must be delivered to the following parties such that they are received by 5:00 p.m. prevailing Eastern Time: (i) the Debtors' investment bank, CRCMS, Attn: Jeffrey R. Manning, 500 E Pratt Street, Baltimore, MD 21202; jeff.manning@crcms.com; Phone: (410) 690-8788; (ii) the Debtors' counsel [Quarles & Brady LLP] and (iii) counsel for the Committee. The Debtors may in their sole discretion, but will not be obligated to, extend the Bid Deadline.

**7. Submission of Bids.** All bids will provide that they are subject to the approval of the Bankruptcy Court. A bid to purchase the Subject Assets must be written in electronic form submitted only by a Prequalified Bidder, and must include the following:

i. The required deposit for a bid (a "**Deposit**") shall be $500,000. The Deposit shall be in the form of a certified check or a wire transfer delivered as directed by CRCMS;

ii. An executed Asset Purchase Agreement based on the APA Template providing for implementation of a Sale Transaction that:

(a) indicates which of the Subject Assets the bidder proposes to acquire pursuant to the Asset Purchase Agreement;

(b) indicates which of SkyMall's executory contracts and unexpired leases the bidder intends to have assumed and assigned in conjunction with the Asset Purchase Agreement; and

(c) indicates any material conditions to closing of the Asset Purchase Agreement (including financing, due diligence, environmental and other conditions to performance by the entity) after approval of the Asset Purchase Agreement by the Bankruptcy Court;

iii. A red-lined copy of the Asset Purchase Agreement showing the differences from the APA Template;

iv. Written evidence demonstrating adequate assurance of future performance by the acquiring entity to the non-Debtor parties under the unexpired leases and executory contracts to be assumed and assigned under the Asset Purchase Agreement; and

v. A written statement identifying the controlling interest holders in the acquiring entity and evidence that the board of directors (or comparable governing body) for the entity making the bid has fully authorized and approved the submission, execution, and delivery of the Purchase Agreement and the consummation of the transactions contemplated thereby.

**8. Qualification Of Bid.** After a Prequalified Bidder has delivered a bid as provided above, the Debtors, in consultation with their advisors and the Committee, will determine whether the Prequalified Bidder (i) has demonstrated the financial capacity to consummate the purchase of the Subject Assets, (ii) is reasonably likely to be able to and willing to consummate the proposed transactions, and (iii) has otherwise timely satisfied the requirements described in the prior paragraph. If so, the Debtors shall designate a Prequalified Bidder as a "**Qualified Bidder**" and such bid as a "**Qualified Bid**." Promptly after making such determination, the Debtors will advise the bidder of such determination and, if the bid is not designated a Qualified Bid, why it is

not a Qualified Bid.  A Prequalified Bidder submitting a nonconforming bid will have until 5:00 p.m. prevailing Eastern Time on **March 22, 2015** to resubmit a bid to qualify, and such determination is at the sole discretion of the Debtors, in consultation with their advisors and the Committee.

The Debtors shall provide notice to the Committee and to the U.S. Trustee of any disqualified bidder, including a summary of reasons for disqualification (without disclosing confidential information).  The Committee and the U.S. Trustee shall retain the right to file an objection with the Bankruptcy Court and request a hearing regarding the Debtors' disqualification of a proposed bidder(s).

**9.** **Auction.**  In the event the Debtors receive two or more Qualified Bids (including the Stalking Horse Bid, if any), the Debtors will conduct an auction sale (the "**Auction**") at which the parties that have submitted Qualified Bids (including the Stalking Horse Bid, if any) may participate.  If necessary, the Auction will be held on **March 25, 2015 at 10:00 a.m. (Mountain Standard Time)**, or such later time as the Debtors may designate, at the offices of Debtors' counsel Quarles & Brady LLP, Two North Central Avenue, Phoenix, Arizona, 85004-2391ffa.  CRCMS shall direct and preside over the Auction at the direction of the Debtors, in consultation with their other advisors and the Committee.

The Debtors may, in their discretion, offer the Subject Assets for sale by the lot or in bulk.  The Debtors reserve the right to remove assets from the Auction either before or after bidding has completed.  In the event of a removal after bidding has been completed, but before irrevocable payment in full, the purchaser's sole remedy shall be the refund of any Deposit and purchase price actually paid.

The Debtors will announce any additions to or deletions from the Subject Asset on the day of the Auction.  The Debtors assume no responsibility for, and make no representations or warranties concerning, descriptions of assets contained in marketing materials for the Auction. It is the obligation of each Qualified Bidder to verify such descriptions prior to the Auction.

The Debtors shall not be liable for any damages of any type or nature (whether in contract, tort or otherwise) sustained or claimed by any bidder or any other person or entity in connection with the Auction.

The Committee and the U.S. Trustee shall have the right to attend the Auction and, if they have a concern regarding the Auction process, they shall have the right to request an immediate hearing with the Bankruptcy Court.

**10. Prevailing Bidder(s).** For its Qualified Bid to be considered, a duly authorized representative of a Qualified Bidder must appear in person at the Auction, unless alternative arrangements satisfactory to the Debtors have been made. The Auction will commence with the announcement of the highest Qualified Bid for each lot and for the bulk sale of the Subject Assets, and bidding will proceed in such manner and on such terms as are announced by the Debtors at the time of the Auction. Among other things, the Debtors may establish a minimum bidding increment at the Auction. At the conclusion of the Auction the Debtors will announce the highest bid combination (the "**Prevailing Bidder**" or "**Prevailing Bidders**"). The Debtors, in consultation with their advisors and the Committee, may conduct the Auction in the manner they believe will be in the best interests of the estate. Each Prevailing Bidder will be required to increase the Deposit under its Asset Purchase Agreement to at least 10% of the bid no later than the time of the Sales Hearing.

**11. Backup Bids.** If for any reason the Prevailing Bidder fails to timely close the sale of the Subject Assets, the Debtors shall have the right (without the requirement of further notice to any party) to close the sale of the Subject Assets pursuant to the Qualified Bid(s) designated at the Auction as the second highest and best offer (the "**Backup Bid(s)**") and approved by the Bankruptcy Court at the Sale Hearing (described below). All other Qualified Bidders shall be required to make their bids irrevocable until five (5) business days from the date of the Sale Hearing so that their bids may be considered as a potential Backup Bid.

**12. Sale Hearing.** Through the Sale Procedures Order, the Bankruptcy Court has scheduled a hearing (the "**Sale Hearing**") to consider any objections to the Sale Motion and to approve the sale of the Subject Assets (and related assignments of executory contracts and unexpired leases) to the Prevailing Bidder or Prevailing Bidders. The Sale Hearing is scheduled for **March ___, 2015, _____ __.m. (Mountain Standard Time)** at the United States Bankruptcy Court for the District of Arizona, Courtroom ___, 230 N. First Avenue, Phoenix, AZ 85003. Each of the Prevailing Bidder or Prevailing Bidders and the Backup Bidder or Backup Bidders must produce a competent witness at the Sale Hearing (and any subsequent hearing) to provide testimony, if necessary, to establish adequate assurance of future performance by each such bidder under the unexpired leases and executory contracts to be assigned to such bidder, to the extent required by Bankruptcy Code §§ 365(b)(1)(C) and/or 365(f)(2)(B). At the Sale Hearing, the Debtors will request that the Court approve the sale of the Subject Assets to the Backup Bidder or Backup Bidders in the event the contemplated sale to the Prevailing Bidder or Prevailing Bidders does not timely close; in which case such Backup Bidder or Backup Bidders shall become the Prevailing Bidder or Prevailing Bidders.

**13. Return of Deposits.** The Debtors shall return the deposit of any Qualified Bidder that is not declared a Prevailing Bidder(s) or Backup Bidder(s) two (2) business days after the entry of the order approving the Sale Transaction(s). In the event a declared Prevailing Bidder fails to timely perform any material obligation under its executed Asset Purchase Agreement, the declared Prevailing Bidder shall forfeit all deposits made, without regard to the Debtors' ultimate damages occasioned by such failure; such deposits shall be applied to the Debtors' damages, if any, and shall not constitute liquidated damages, however, each Qualified Bidder acknowledges and agrees that under such circumstances, the Debtors' damages are not less than the amount of the deposit; and, notwithstanding the foregoing, the Debtors and the bankruptcy estates shall retain all other rights, remedies, claims, counterclaims, and defenses, including the right to seek equitable or injunctive relief.

**14. Reservation of Rights.** The Debtors reserve the right, in consultation with their advisors and the Committee, to alter the Sale Procedures, including extending deadlines contained herein, and to establish procedures and rules during the Auction, as they may determine reasonably appropriate to maximize the value realized by the Debtors estate from the Sale Transaction(s).

**15. Damages for Controlling of Sales Price.** All potential bidders are advised that, under Bankruptcy Code § 363(n) and applicable law, the Debtors and/or their estates may avoid a transaction and recover damages (actual and possibly punitive) if the sale price was controlled by any undisclosed agreement amongst the bidders.