Quarles & Brady LLP
Firm State Bar No. 00443100
Renaissance One
Two North Central Avenue
Phoenix, AZ 85004-2391
TELEPHONE 602.229.5200

Attorneys for Debtors and Debtors-in-Possession

John A. Harris (#014459)
john.harris@quarles.com
Lori L. Winkelman (#021400)
lori.winkelman@quarles.com

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | In Proceedings Under Chapter 11 |
| SKYMALL, LLC, | Case No. 2:15-bk-00679-BKM |
| Debtor. | Jointly Administered with Case Nos.: |
| Jointly Administered with: | 2:15-bk-00680-BKM |
| XHIBIT CORP., | 2:15-bk-00682-BKM |
| XHIBIT INTERACTIVE, LLC, | 2:15-bk-00684-BKM |
| FLYREPLY CORP., | 2:15-bk-00685-BKM |
| SHC PARENT CORP., | 2:15-bk-00686-BKM |
| SPYFIRE INTERACTIVE, LLC, | 2:15-bk-00687-BKM |
| STACKED DIGITAL, LLC, and | 2:15-bk-00688-BKM |
| SKYMALL INTERESTS, LLC. | |

This Pleading applies to:

■ All Debtors
☐ Specified Debtors

**DECLARATION OF JEFFREY R. MANNING IN SUPPORT OF MOTION FOR ORDERS (I) AUTHORIZING BIDDING PROCEDURES AND AUCTION; (II) SCHEDULING SALE HEARING AND APPROVING NOTICE THEREOF, (III) AUTHORIZING SALE OF ASSETS, AND (IV) GRANTING RELATED RELIEF**

QB\154622.00010\34230867.3

**JEFFREY R. MANNING**, declares as follows:

1.     I am a Managing Director and group head of the Special Situations Practice at CohnReznick Capital Market Securities, LLC ("**CRCMS**").  I submit this Declaration in support of the "*Motion For Orders (I) Authorizing Bidding Procedures And Auction, (II) Scheduling Sale Hearing And Approving Notice Thereof, (III) Authorizing Sale Of Assets, And (IV) Granting Related Relief*" [Docket No. 22] (the "**Sale Motion**"), which was approved by the "*Order Establishing Bidding Procedures For Auction Sale, Scheduling Hearing On Sale Motion, And Granting Related Relief*" [Docket No. 53] and the "*Amended Stipulated Order Establishing Bidding Procedures For Auction Sale, Scheduling Hearing On Sale Motion, And Granting Related Relief*" [Docket No. 131] (collectively, the "**Sale Procedures Order**").  To provide investment banking services, I have qualified as a General Securities Representative (S7) and as a General Securities Principal (S24) under FINRA licenses, and I also hold the Certified Turnaround Professional (CTP) designation.

2.     On or about January 9, 2015, and approved by the Court on March 12, 2015, CRCMS was retained by SKYMALL, LLC, ("SkyMall") and the other Debtors in the above-captioned cases (collectively with SkyMall, the "**Debtors**") to provide investment banking services related to an expedited sale of essentially all of SkyMall's assets under Section 363 of the Bankruptcy Code.  Specifically, CRCMS was tasked with identifying opportunities for sale of the Debtors' assets and business; pursuing the sale of the Debtors; advising the Debtors concerning opportunities for such sales; participating in negotiations concerning such sale; and advising the Debtors on other matters that arose during the engagement.  See "*Emergency Application For Entry Of An Order Authorizing The Employment And Retention Of CohnReznick Capital Market Securities, LLC As Investment Banker Pursuant To 11 U.S.C. §§ 327 and 328*" [Docket No. 21] and the "*Final Order Authorizing The Employment And Retention Of CohnReznick Capital Market Securities, LLC As Investment Banker Pursuant to 11 U.S.C. §§ 327 and 328*" [Docket No. 240].

QB\154622.00010\34230867.3

## MARKETING EFFORTS

3.    After the bankruptcy filing on January 22, 2015 CRCMS sent an eBlast out to approximately 4,000 professionals on a proprietary data base, shared the mandate with the 300+ partners of CohnReznick LLP, posted the summary with the Nexia Network (an international alliance of accounting firms), and shared the executive summary through a proprietary CRCMS list of 185+ family offices of high net worth individuals. Notice of the sale was published by Debtors' counsel as follows: Arizona Capitol Times on 3/6, 3/13 and 3/20/2015; Arizona Business Gazette on 3/5, 3/12 and 3/19/2015; Arizona Republic on 3/8, 3/15 and 3/22/2015; and Record Reporter on 3/6, 3/13 and 3/20/15.

4.    As a part of the marketing efforts, and in cooperation with Debtors' management (especially Scott Wiley and Theresa McMullen), CRCMS drafted and completed a Confidential Information Memoranda  ("CIM") outlining the history, status, and outlook for the Debtors' business. Additional collateral marketing materials were produced, and an Online Data Room was prepared with 166 document files posted.

5.    By March 25, 2015, I had contacted one hundred and eighty-eight (188+) parties regarding the acquisition of the Debtors' assets, including one hundred and eighteen financial buyers (118) and sixty-eight strategic investors (68). Approximately one hundred and seventy-seven (177) Non-Disclosure Agreements ("NDA") were distributed, and seventy (70) NDAs were executed. Each party contacted regarding the acquisition of SkyMall's assets usually received several telephone calls plus at least the executive summary by email. Specifically, CRCMS undertook substantial efforts to target and contact entities that might have an interest in acquiring the SkyMall's assets.

6.    In addition to providing investors with access to documents and data, I facilitated conference calls and site visits for potential investors with senior management. Sixty-three (63) Confidential Information Memoranda were distributed. Those CIMs generated forty-one (41+)

QB\154622.00010\34230867.3

potential investors active in the Online Data Room conducting due diligence, and thirty-one (31) of those potential investors requested and received either meetings or conference calls with senior management; several potential investors had multiple visits and conference calls with senior management. CRCMS worked hard to ensure that each and every investor was given equal access to the same information.

7.      In a good faith attempt to distribute high quality and accurate information for prospective investors, CRCMS worked with the Debtors' senior management team to vet and reconcile financial information that was posted in the Online Data Room, included in the CIM, and used in the Asset Purchase Agreement ("APA") template.

8.      Notification emails were sent to the universe of potential bidders that executed NDAs reminding them of the March 19th pre-qualification deadline. Seven (7) parties formally pre-qualified, and I coordinated the pre-qualification process with Financial Advisors from the Official Committee of Unsecured Creditors. This outreach included numerous phone calls with each potential bidding group to confirm that all parties received the notification.

## AUCTION SALE

9.      To pre-qualify, bidders were requested to provide CRCMS financial information to confirm financial wherewithal and adequate assurance by March 19, 2015. Pre-qualified bid information was also reviewed by the UCC Financial Advisors.

10.     On March 24, 2015, working with the Debtors management team, I prepared the "CRCMS Scorecard" summarizing salient terms of each Qualified Bid. The CohnReznick Capital Scorecard attempted to aid transparency by analyzing different bids to bring each proposal down to a projected Net Consideration from the Transaction. While the Scorecard was reviewed and vetted by several parties, including the prospective Qualified Bidders and counsel for the Debtor and the UCC, the assumptions used in the CRCMS Scorecard represented the Debtors' best assessment of the two Qualified Bids, and CRCMS used the Scorecard during the Auction

(as defined below) to monitor subsequent bids during the Auction. The two Qualified Bids were from C&A Marketing, Inc. ("**C&A Marketing**") and FSG.

11.     An auction was conducted on March 25, 2015 (the "**Auction**"). The Auction began at 2:00 p.m. at the offices of Quarles & Brady LLP, Two North Central, Phoenix, AZ 85004. A court reporter made an official record of the proceedings at the Auction. I put certain procedural clarifications into the official record to begin the Auction, and each prospective Qualified Bidder was also given a chance to put material into the official record. Then there was a 30 minute break when representatives from CRCMS, Debtors' counsel, UCC counsel, and UCC Financial Advisor met with each bidder in an attempt to clarify certain/refine terms and conditions between the bidders.

12.     During subsequent bidding, CRCMS monitored the bidding activity through the CRCMS Scorecard.

## DETERMINATION OF HIGHEST AND BEST

13.     There were several rounds of bidding, followed by break-out room discussions. At the conclusion of the Auction, the Debtors and the Creditors Committee, following consultation with the Creditors Committee representatives and Equity Committee representative, determined that C&A Marketing was the Prevailing Bidder based on the terms and conditions of its bid as set forth in the Asset Purchase Agreement. Because of certain terms and conditions in the FSG proposal, FSG was designated in the record as the "Back-Up Bid." C&A Marketing's bid was determined to be the "highest and best" because it was fair and reasonable; financially well backed, had substantially fewer contingencies than the FSG bid, and was in the best interests of the Debtors, their Estates, their creditors and all other parties in interest. In the sound exercise of the Debtors' business judgment, the C&A Marketing bid gave the highest and best projected return to the Estates.

QB\154622.00010\34230867.3

5

14.     Based upon confidential financial information reviewed by CRCMS, C&A Marketing has the financial wherewithal and adequate assurance to consummate the proposed transaction.

15.     Based upon my 30+ years of experience in corporate recovery, and the sales process executed by CRCMS leading up to the Auction, it is my testimony that the prospective sale of these assets to C&A Marketing is the highest and best bid, has been done with a market test in good faith, and on an arms-length basis.

16.     I have reviewed the proposed Order approving the sale to C&A Marketing that has been lodged with the Court (the **"Sale Order"**).  I believe the proposed Findings in the Sale Order regarding the sale process and the Auction are accurate.

I declare under penalty of perjury that the foregoing is true and correct.


/s/ Jeffrey R. Manning
Jeffrey R. Manning
Managing Director
CohnReznick Capital Market Securities, LLC

QB\154622.00010\34230867.3