ILENE J. LASHINSKY (#003073)
United States Trustee
District of Arizona

ELIZABETH C. AMOROSI (#10755)
Assistant United States Trustee
230 N. First Ave., Suite 204
Phoenix, Arizona 85003-1706
Phone: (602) 682-2600
FAX:   (602) 514-7270

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>SKYMALL, LLC.,<br><br>Debtor.<br><br>Jointly Administered with:<br>XHIBIT CORP.<br>XHIBIT INTERACTIVE, LLC<br>FLYREPLY CORP.,<br>SHC PARENT CORP.,<br>SPYFIRE INTERACTIVE, LLC,<br>STACKED DIGITAL, LLC<br>SKYMALL INTERESTS LLC | In Proceedings under Chapter 11<br><br>Case No. 2:15-bk-00679-BKM<br><br>Jointly Administered with:<br>2:15-bk-00680<br>2:15-bk-00682<br>2:15-bk-00684<br>2:15-bk-00685<br>2:15-bk-00686<br>2:15-bk-00687<br>2:15-bk-00688<br><br>**UNITED STATES TRUSTEE'S OBJECTION TO DISCLOSURE STATEMENT FOR JOINT PLAN OF REORGANIZATION** |

The United States Trustee, by and through counsel undersigned, hereby objects to the Disclosure Statement for Joint Chapter 11 Plan of Reorganization ("Disclosure Statement") filed by the Debtors and the Official Committee of Unsecured Creditors for the following reasons.

**Memorandum of Points and Authorities**

The Joint Plan contains provisions providing releases and exculpation of non-debtors which do not appear to benefit the estates. Further, the Debtors and the Committee have provided no justification for these provisions in either the Plan or the Disclosure Statement.

**I.    BOTH THE RELEASE AND EXCULPATION SECTIONS OF THE PLAN VIOLATE THE CODE AND NINTH CIRCUIT LAW AND MUST BE STRICKEN**

In Article I(A)35, the debtors and the Committee define "Exculpated Parties" specifically as follows:

> "*Exculpated Parties*" means, collectively, the Debtors, the officers and directors of the Debtors that served in such capacity at any time from and after the Petition Date, the Creditors' Committee and individual members thereof (solely in their capacity as such), the Equity Committee and the individual members thereof (solely in their capacity as such), the Liquidating Trustee, the Liquidating Trust Advisory Board and its individual members thereof (solely in their capacity as such) and each of the respective Representatives (each of the foregoing in its individual capacity as such).

In Article I(A)64, "Releasees" are defined as including the following parties:

> "*Releasees*" means, collectively, the Debtors, officers and directors of the Debtors that served in such capacity at any time from and after the Petition Date, the Creditor's committee and the individual members thereof in their capacity as such, the Equity Committee and the individual members thereof in their capacity as such, and each of their respective Representatives.

Finally, "Representatives" as used above is defined as follows in Article I(A)66:

> "*Representatives*" means, with regard to any Entity, its officers, directors, employees, advisors, attorneys, professionals, accountants, investment bankers, financial advisors, consultants, agents and other representatives (including their respective officers, directors, employees, members and professionals).

Those definitions are useful in understanding the Release and the Exculpation clauses set forth in the Disclosure Statement.

With respect to the Releases, the Disclosure Statement provides in Section J-2 that the Releasees will enjoy the following benefit:

> . . . a full release, waiver and discharge to the Releasees (and each such Release so released shall be deemed released and discharged by the Debtors) and their respective properties from any and all Causes of Action and any other debtors, obligations, rights, suits, damages, actions, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, equity or otherwise, whether for tort, contract, violations of federal or state securities laws, or otherwise, based in whole or in part upon any act or omission, transaction or other occurrence or circumstances existing or taking place during the period of the Petition Date through the Effective Date in any way related to the Debtor' Chapter 11 cases, including, without limitation, those that any of the Debtors or the SM Liquidating Trust would have been legally entitled to asset or that any holder of a Claim or other Entity would have been legally entitled to assert for or on behalf of any of the Debtors or Estates and further including those in any way related to the Chapter 11 Cases or the Plan; provided, however, that the foregoing provisions of Article IX.B shall have no effect on the liability of any Releasee that results from any act or omission that is determined in a determined in a Final Order to have constituted gross negligence or willful misconduct. For the avoidance of doubt, no provision of Article IX.B.1 of the Plan shall be construed as a release of any Cause of Action against the Releasee based upon any act or omission, transaction or other occurrence or circumstances existing or taking place prior to the Petition Date.

And, similarly, the Exculpation Clause provides that the Exculpated Parties:

> . . . shall neither have nor incur any liability to any Entity for any and all Claims and Causes of Action arising on or after the Petition Date, including any act taken or omitted to be taken in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or consummating the Plan, the Disclosure Statement, Liquidating Trust Agreement, or any other contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the Sale or the liquidation of the Debtors; provided, however, that the foregoing provisions of Article IX.C of the Plan shall have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order to have constituted gross negligence or willful misconduct; provided, further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above-reverenced documents.

The Plan's proposed exculpation and release clauses are overbroad and contrary to the Ninth Circuit Court of Appeal's standard, which is based upon 11 U.S.C. § 524(e) and disfavors the proposed releases, indemnifications, or injunctions of independent third party claims of creditors and other parties in interest against non-debtors through a plan of reorganization. Further, to the extent such exculpation applies to Debtors' attorneys, financial advisors and other professionals, such exculpation violates the employment standards of such professionals under 11 U.S.C. §§ 327 and 328, as well as ethics rules.

The Ninth Circuit unequivocally stated that §524(e) precludes bankruptcy courts from discharging the liabilities of non-debtors. See Resorts Intl., Inc. v. Lowenschuss, (In re Lowenschuss), 67 F. 3d 1394, 1401 (9th Cir. 1995), cert. denied, 517 U.S. 1243, 116 S. Ct. 2497, 135 L. Ed. 2d 189 (1996). In Lowenschuss, the Ninth Circuit further explained the impact of 11 U.S.C. § 524(e)[1]:

> [T]hat Congress provided explicit authority to issue injunctions in favor of third parties **[pursuant to § 524(g)]** in an extremely limited class of cases. **This reinforces the conclusion that § 524(e) denies any such authority in other, non-asbestos, cases.**

Id. at 1402 n.6 (emphasis added).

The seminal decisions in the Ninth Circuit tell us that "injunctions," "releases," and "indemnifications" of claims against insiders or against non-debtors incorporated into a plan of reorganization are prohibited by Bankruptcy Code § 524(e). Id. at 1402; In re American Hardwoods, 885 F.2d 621, 626 (9th Cir. 1989); Underhill V. Royal, 769 F.2d 1426, 1432 (9th Cir. 1985) (holding that consent of creditors to a plan of reorganization that purports to discharge a non-debtor *does not* override the restrictions imposed by Bankruptcy Code § 524(e)).

The UST is not aware of any case that limits the foregoing Ninth Circuit decisions.[2] Subsequent bankruptcy decisions have continued to adhere closely to this standard. As discussed in more detail

---

[1] 11 U.S.C. § 524(e) provides:

Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

[2] The one case that at first blush appears to contradict the Ninth Circuit Standard is In re Western Asbestos Company, 313 B.R. 832 (Bankr. N.D. Cal. 2003). However, Western Asbestos is easily distinguishable as a case that falls within the purview of § 524(g), which specifically allows for claims of third parties in mass tort asbestos cases to be limited and enjoined as discussed by the Ninth Circuit in Lowenschuss. The case at bar involves no such claims.

below, one bankruptcy court stated, in examining the requirements of § 524(e), ". . . decisions in the Ninth Circuit appears not to favor exculpation or indemnification provisions that limit liability for negligence or breaches of fiduciary duties." See In re WCI Cable, Inc., 282 B.R. 457, 479 (Bankr.D.Or.,2002), citing In re Metricom, Inc., 275 B.R. 364 (Bankr. N.D. Cal. 1991) (Broad indemnification and exculpation provision of financial advisor agreement not approved, based on no showing of reasonableness, but such provisions not invalid per se); In re Mortgage & Realty Trust, 123 B.R. 626 (Bankr. C.D. Cal. 1991) (Provisions of investment advisor agreement not approved providing for indemnification extending only to acts other than negligence, gross negligence, or willful misconduct).

In In re WCI Cable, Inc., 282 B.R. 457 (Bankr.D.Or.,2002), the debtors sought approval of three different exculpation clauses: The first clause sought exculpation of an insider from claims held solely by the debtors; the second clause sought the exculpation for the members of the Official Creditors Committee; and the third clause sought the type of exculpation similar to the Exculpation Clause at bar. See In re WCI Cable, Inc., 282 B.R. at 479.

The Court found that the first two proposed exculpations to be appropriate. The first, involving the insider, sought only to release claims of the debtors and did not preclude direct claims of third parties against the insider. Moreover, in regards to the members of the Official Creditors Committee, the Court found that the "limitation of liability provisions for Creditors Committee members and their agents, *other than professionals*, included in the Creditors Committee Exculpation Clause *cover no more and no less than the limited immunity for creditors' committee members performing their functions under the Bankruptcy Code contemplated in § 1103(c)*." Id. at 477 (emphasis added). In its third exculpation clause, however, the WCI Plan sought to limit the liability of the debtors' officers, directors, employees and agents, including professionals for any of their post petition acts or omissions with respect to the debtors' ("WCI Group") bankruptcy proceedings, except for willful misconduct or gross negligence.

In its analysis, the Court stated, "[T]he WCI Group Exculpation Clause is particularly problematic because it establishes one standard of liability for post-petition conduct, limited to willful misconduct and gross negligence, for the WCI Group entities and their officers and agents, fiduciaries of

the WCI Trust, and their professionals." Id. at 478. In observing this point the bankruptcy court pointed to two Ninth Circuit Bankruptcy Appellate Panel (BAP) decisions, noting that while at times certain nonjudicial officers are entitled to absolute quasi-judicial immunity, **even trustees may be sued for intentional and negligent actions** for violations of duties imposed upon the trustee by law. Id., citing In re Castillo, 248 B.R. 153, 157 (9th Cir. BAP 2000); In re Kashani, 190 B.R. 875, 883 (9th Cir. BAP 1995) (emphasis added).

In summary, the WCI Cable bankruptcy court held: (1) a debtor can release insiders, fiduciaries and professionals from its own claims; (2) a plan can include a provision expressly stating the statutory quasi-immunity afforded members of the official committee pursuant to § 1103(c); and (3) a plan can contain an exculpation provision limiting post-petition liability of a debtor's insiders, agents and professionals so long as third party claims for negligence, breach of fiduciary duty, gross negligence and willful misconduct are excepted from the provision. The exculpation and release clauses proposed by the Debtors and the Committee in this case do not meet this standard.

## II. THE EXCULPATION AND RELEASES OF PROFESSIONALS VIOLATE ACCEPTED PROFESSIONAL STANDARDS

As they relate to attorneys and other professionals for the estate, the Plan's release and exculpation clauses run afoul of applicable standards of professional conduct. Indemnification of substandard conduct is inappropriate, especially as it relates to attorneys and other professionals employed pursuant to §§ 327 and 328 of the Bankruptcy Code. Such professionals owe fiduciary duties to their clients, and such duties should not be less in bankruptcy proceedings than in matters outside of bankruptcy. See, e.g., Hansen, Jones & Leta, P.C. v. Segal, 220 B.R. 434, 454 (D.Utah 1998) (stating duties to the client are the same for bankruptcy practitioners as well as non-bankruptcy practitioners); see also In re Envirodyne Industries, Inc., 150 B.R. 1008, 1016 (Bankr. N.D. Ill. 1993) (Requirements of §327(a) reflect "congressional intention to hold professionals performing duties for the estate to strict fiduciary standards"); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 27 (Bankr. S.D.N.Y. 1991) (indicating indemnification is inconsistent with professionalism; professionals should not be relieved of the consequences of their actions); In re Mortgage & Realty Trust, 123 B.R. 626, 630 (Bankr.

1  C.D. Cal. 1991) (stating ethics rules "prohibit an attorney from obtaining an indemnity from a client in connection with professional services").

Here, if the same professionals initially filed employment applications with similar exculpation or release provisions, such applications would likely have faced objections from the UST and other creditors. These same professionals should not now be permitted to obtain indirectly at the end of the case what they could not have obtained directly at the commencement of their court-approved employment.

For the legal profession, it has long been accepted as unethical for a professional to accept any form of exoneration of liability from its client. See, e.g., Ariz. Rules of Prof'l Conduct ER 1.8; Model Rules of Prof'l Conduct R. 1.8(h)(1) (2009); Model Code of Prof'l Responsibility EC 6-6; Model Code of Prof'l Responsibility DR 6-102(A). Permitting broad indemnification or exculpation removes incentive to professionals to perform their duties competently. Clearly, in a non-bankruptcy context, broad exculpatory provisions are generally not available to attorneys; the result should be no different in a bankruptcy context.

These same standards would apply for any certified public accountants are reflected in Ariz. Rev. Stat. Ann. § 32-741(A)(4) (Thomson Reuters 2010).

In summary, the Plan's limitation of liability for the professionals is objectionable because (1) it runs afoul of the long standing Ninth Circuit Standard by violating 11 U.S.C. § 524(e) thereby prohibiting confirmation of the Plan; and (2) violates ethical standards and is contrary to public policy.

WHEREFORE, until the above items are addressed, the UST respectfully requests that the Disclosure Statement not be confirmed at this time.

RESPECTFULLY SUBMITTED this 11th day of June, 2015.

ILENE J. LASHINSKY  
United States Trustee  
District of Arizona

/s/ ECA #10755  
Elizabeth C. Amorosi  
Assistant United States Trustee